**McKAY BUICK, INC., a corporation, and Gilbert Buick, Inc., a corporation, Plaintiffs-Respondents,**

**v.**

**Robert F. LOVE, Chairman, and Stephen Snyder, and Tom Otto, Members of the Tax Commission of the State of Missouri, Defendants-Appellants.**

**No. 60518.**

Supreme Court of Missouri, en banc.

Sept. 12, 1978.

---

John D. Ashcroft, Atty. Gen., Philip R. Baker, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

David Brydon, Kenneth R. Satterly, Hawkins, Brydon & Swearengen, P. C., Jefferson City, for plaintiffs-respondents.

Stanley P. Christopher, III, Deputy County Counselor, Kansas City, James H. White, Thomas W. Wehrle, Clayton, for amici.

FINCH, Judge.

This is an appeal from a declaratory judgment wherein the trial court held that § 150.040, RSMo Supp.1976,[1] a new statute enacted in 1976 to impose an ad valorem tax on new motor vehicles, is constitutional and that § 137.115, RSMo Supp.1973[2] is applicable to the valuation established in § 150.040 in determining the assessed valuation to which the applicable tax rate should be applied. Defendants appealed to this court which has jurisdiction because construction of a revenue law and construction of provisions of the Missouri Constitution are involved. We reverse for the reason that we conclude that § 150.040.2 violates the provisions of Mo.Const. art. X, § 4(b).[3]

In 1975 this court held unconstitutional § 150.010, RSMo Supp.1974[4] which imposed an ad valorem tax on new and used motor vehicles held for use and sale by motor vehicle dealers. (McKay Buick, Inc. v. Spradling, 529 S.W.2d 394 (Mo. banc 1975), hereinafter referred to as McKay I.) In its next session, the legislature enacted §§ 150.035 and 150.040[5] which impose an ad valorem tax, equal to that imposed on real estate, on goods, wares and merchandise of merchants. Section 150.040.1 covers the imposition of the tax on goods, wares and merchandise other than new motor vehicles. It is based on the highest amount thereof which merchants have in their possession or control, whether owned or consigned, at any time between the first Monday in January and the first Monday in April in each year. Section 150.040.2 provides for the tax on new motor vehicles. It states:

"Merchants shall pay an ad valorem tax equal to that which is levied upon real estate on new motor vehicles. The inventory valuation for assessment purposes for the ad valorem tax on new motor vehicles shall be nine and one-half

percent of the gross amount received from sales by merchants for new motor vehicles sold by them from January first through March thirty-first of each year . . . . ."

In response to an inquiry by the State Tax Commission, the Attorney General rendered opinion No. 64 dated March 17, 1977, wherein he expressed the view that § 137.-115, which provides generally that real and tangible personal property shall be assessed for purposes of ad valorem taxation at thirty-three and one-third percent of its true value in money, does not apply to the inventory valuation established for new motor vehicles by § 150.040.2. Plaintiffs, who are automobile dealers, then brought this action wherein they sought to have the court declare that § 137.115 should be applied to the inventory valuation established by § 150.040 in order to establish the figure on which the tax would be computed. Defendants, in addition to filing an answer to that contention, filed a counterclaim wherein they sought a declaration that § 150.040.2 violates Mo.Const. art. X, §§ 3, 4(a) and 4(b) and is unconstitutional.

The only witness called by plaintiffs was Mr. Ralph J. Kalberloh, executive vice-president of the Missouri Automobile Dealers' Association, who caused Senate Bill 828 to be introduced in 1976. He testified that prior to that time assessments of automobile dealers were not uniform, but varied from county to county. As a result, dealers in one county were paying substantially higher taxes than a competing dealer in an adjoining county. This bill sought to establish a fair and equitable method of valuing inventory whereby dealers would pay the tax on the same basis. The method employed in the statute was to use a percentage of gross receipts from the sale of new

1. Laws 1976, p. 662, S.B. 828, § 1.

2. Laws 1973, p. 213, C.C.S.H.B. 592, § 1.

3. Mo.Const. art. X, § 4(b) provides in pertinent part:
   "Property in classes 1 and 2 and subclasses of class 2, shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law for each class and for each subclass of class 2."
   Classes 1 and 2, referred to in § 4(b), are (1) real property and (2) tangible personal property. Mo.Const. art. X, § 4(a).

4. Laws 1974, p. 782, S.B. 402, § 1.

5. Laws 1976, p. 662, S.B. 828, § 1.

motor vehicles during a specified three months period. He explained that some areas of the state will receive less tax income than before while others will receive more, but that on a statewide basis the new bill can be expected to produce more tax than in the past.

Defendants called no witnesses and introduced no evidence other than the Attorney General's opinion dated March 17, 1977.

■ A duly enacted statute is presumed to be constitutional unless shown to be otherwise, *Hull v. Baumann*, 345 Mo. 159, 131 S.W.2d 721 (1939), and the burden of proving unconstitutionality is on the one asserting it. *Walters v. City of St. Louis*, 364 Mo. 56, 259 S.W.2d 377, 386 (banc 1953). However, this rule as to the burden of proof has no application where, without the necessity for extraneous evidence, it appears from the provisions of the act itself that it transgresses some constitutional provision. An example of such a case is *McKay I.* In that case the defendants (Director of Revenue and State Tax Commission) asserted in their answer that § 150.010, RSMo Supp. 1974[6] was unconstitutional because it violated Mo.Const. art. X, § 4(b). (They also alleged violation of Mo.Const. art. X, §§ 3 and 4(a) but the court did not reach those questions.) Defendants offered no testimony. Hence, there was no evidence from which to ascertain whether defendants had sustained their burden of proof to establish that the statute was unconstitutional. Even so, this court, based on an analysis of the provisions of § 150.010, held it to be unconstitutional. The statute provided for an ad valorem tax of $2.43 on each new motor vehicle and $1.50 on each used motor vehicle, regardless of make or model or size. It did so without assessment of the motor vehicles at their value or such percentage thereof as might be fixed by law. The court held that in eliminating assessment and the value factor, the statute violated the requirements of Mo.Const. art. X, § 4(b) which requires that tangible personal property be assessed for property tax purposes at its value or such percentage thereof as

may be fixed by law. Thus, the court held the act unconstitutional on the basis of what was readily and clearly apparent from the provisions of the statute itself without requiring any other evidence.

■ As previously noted, defendants in this case offered no evidence relative to constitutionality of § 150.040.2. They did not undertake to sustain in that manner their burden of proving the statute is unconstitutional. Therefore, they are not entitled to a ruling that it is unconstitutional unless it is readily and clearly apparent from an examination of its provisions that it violates one of the constitutional provisions pleaded by defendants.

In providing for the ad valorem tax on new motor vehicles, § 150.040.2 makes no reference to the number of vehicles owned, possessed or controlled by the dealer at any time. Such ownership, possession or control is not a determining factor. Instead, the tax is computed entirely on the basis of gross receipts from the sale of new motor vehicles between January first and March thirty-first of each year. One dealer might have substantially more automobiles on hand during this period than some other dealer and yet, due to such things as less effective sales efforts, strikes, adverse weather or other factors, have gross receipts substantially equal to those of a dealer with fewer automobiles. In that event they would pay the same amount of tax. In such a situation the dealers obviously are not paying a tax based on the value of motor vehicles owned or possessed or controlled during the specified period. Assessment of those vehicles does not occur. Instead, the tax definitely is based on gross receipts. The fact that § 150.040.2 specifies nine and one-half percent of gross receipts for the period does not alter the fact that it is a tax based entirely on gross receipts. This would still be true if it specified five percent or fifty percent or one hundred percent of gross receipts from sales.

In *Viquesney v. Kansas City*, 305 Mo. 488, 266 S.W. 700 (banc 1924), this court con-

---

6. Laws 1974, p. 782, S.B. 402, § 1.

sidered the nature of a tax based on gross receipts. In that case plaintiff sought to enjoin collection of taxes due under ordinances which levied various taxes, each of which was described as a license tax. The cost of the various licenses was established by different formulas, each of which was based upon gross receipts or volume of business done by the taxpayer. For example, a tax of one cent per gallon was imposed on gasoline sold by Viquesney at his garage. He claimed that these were actually ad valorem taxes rather than license or excise taxes and that they were unconstitutional because they violated Mo.Const. art. X, § 4 (1875) which required that property be taxed in proportion to its value. In affirming the action of the trial court in denying plaintiff relief, the court said at 702:

"The first question for determination is whether the tax of 1 cent a gallon on the gasoline sold by the dealer is a property tax or an excise or occupation tax. Where a tax is imposed and is measured by the amount of business done or the extent to which the privilege is conferred or exercised by a taxpayer, irrespective of the value of his assets, it is an 'excise tax.'

. . . . .

"In the present case the tax is in no sense an ad valorem tax. There is no assessment of the property owned by the taxpayer; it would not matter how much gasoline he owned at any particular time, or whether he owned any gasoline at all. It is measured by the volume of his business, without any regard to the amount of gasoline on hand. . . . Therefore it is not a tax on property and does not come within the requirement of section 4, art. 10, of the Constitution, requiring property to be taxed in proportion to its value."

In this case, as in Viquesney, the basis of the tax is not the value of the motor vehicles on which it is levied. There is no assessment of those vehicles as Mo. Const. art. X, § 4(a) requires for an ad valorem tax on property. The fact that § 150.040.2, in specifying a valuation based on a percentage of gross receipts, labels it an "inventory valuation for assessment purposes" does not alter the real basis on which the tax is determined. The use of those words does not result in the tax being based on an assessment of new motor vehicles owned, possessed or controlled by the dealer or in those vehicles being taxed in proportion to their value. The formula is based entirely on gross receipts. If the dealer's business was shut down and made no sales for some reason for all of the three months period, it would owe no tax even though it owned, possessed or controlled new motor vehicles during the period. Section 150.-040.2 conflicts with Mo.Const. art. X, § 4(b) and is unconstitutional.

In their brief and in oral argument plaintiffs call attention to our decision in *Xerox Corporation v. State Tax Commission*, 529 S.W.2d 413 (Mo. banc 1975), arguing that if the formula approved therein is constitutional, then *a fortiori*, the method specified in § 150.040.2 must be so. We do not agree. In *Xerox* the State Tax Commission established a formula for valuing rental machines leased by Xerox at 40 times the average monthly rental thereon, divided by 3. Determining value of property based on the rentals it produces is a reasonable method of arriving at a value of property for tax purposes particularly where, as in *Xerox*, the property involved is not priced for sale and is not offered for sale. *Xerox* is not authority for approving § 150.040.2.

Having so concluded, we need not and do not reach the question of whether § 150.-040.2 violates the provisions of Mo.Const. art. X, §§ 3 and 4(a), nor do we decide the question of whether the "inventory valuation for assessment purposes" specified in § 150.040.2, if valid, would be reduced by applying thereto the percentage formula provided in § 137.115.

The judgment on the petition and the judgment on the counterclaim are reversed and the cause is remanded to the circuit court with directions to enter judgment in accordance with the views herein expressed.

MORGAN, C. J., BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., and HOUSER, Special Judge, concur.

SIMEONE, J., not participating because not a member of the court when cause was submitted.